```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
                     COLUMBIA DIVISION

PATRICIA ELLENA BARTH            )
                                 )
v.                               )    No. 1:05-0006
                                 )    Judge Nixon/Brown
JO ANNE B. BARNHART, Commissioner )
of Social Security               )
```

To:  The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C.
§405(g), to obtain judicial review of the final decision of the
Commissioner of Social Security denying plaintiff disability
insurance benefits ("DIB") and supplemental security income
("SSI"), as provided under Titles II and XVI of the Social
Security Act ("the Act"), as amended.  The case is currently
pending on plaintiff's motion for judgment on the administrative
record (Docket Entry No. 15), to which defendant has responded
(Docket Entry No. 16).  For the reasons stated below, the
Magistrate Judge recommends that plaintiff's motion be **GRANTED**,
and that the Commissioner's decision be **REVERSED** and the cause
**REMANDED** for further proceedings consistent with this report, to
include supplementation of the medical record, rehearing, and the
issuance of a new decision.

Case 1:05-cv-00006   Document 17   Filed 09/19/05   Page 1 of 21 PageID #: 13

## I. INTRODUCTION

Plaintiff protectively filed her DIB and SSI applications on March 22, 2001 (Tr. 57-59, 433-35). She alleged disability beginning July 25, 2000, due to cervical and lumbar spine problems, right shoulder problems, and nerves (Tr. 74). Plaintiff's applications were denied initially (Tr. 34-38, 438-442) and upon reconsideration (Tr. 41-42, 445-46). An administrative law judge ("ALJ") before whom plaintiff and her counsel[1] appeared, heard testimony from plaintiff and a vocational expert ("VE") on June 7, 2004 (Tr. 447-477). On August 23, 2004, the ALJ issued a written decision finding plaintiff not disabled (Tr. 15-20). The ALJ made the following findings:

1.  The claimant met the insured status requirements of title II of the Social Security Act as of July 25, 2000.

2.  The claimant has not engaged in any substantial gainful activity since July 25, 2000.

3.  The evidence establishes that the claimant has a severe combination of impairments which includes degenerative disc disease, degenerative changes of the right shoulder, depression, and wrist surgery, but that she does not have an impairment or combination of impairments of the level of severity required by 20 CFR Part 404, Subpart P, Appendix 1.

4.  The evidence establishes that the claimant has not experienced any pain or other symptomatology of a disabling level of severity on an ongoing basis.

---

[1]Though represented by counsel before the agency, plaintiff is proceeding pro se in this appeal to the district court.

2

5.   The evidence establishes that the claimant retains the
     capacity to perform a limited range of sedentary work,
     with lifting of 10-15 pounds, 2-3 hours of
     walking/standing during an 8-hour workday for less than
     an hour at a time, 4-6 hours of sitting during an 8-
     hour workday for 1 hour at a time, decreased reaching
     using her right shoulder, and a moderate limitation in
     her ability to maintain concentration and attention.

6.   The claimant cannot perform her vocationally relevant
     past work.

7.   The claimant is a younger individual.  20 CFR 404.1563
     and 416.963.

8.   The claimant has a limited education and is literate.
     20 CFR 404.1564 and 416.964.

9.   The claimant has performed some skilled and semiskilled
     work during her vocationally relevant past, but her job
     skills are not transferable to other work.  20 CFR
     404.1568 and 416.968.

10.  If the claimant possessed the capacity to perform the
     full range of sedentary work, section 404.1569 of
     Regulations No. 4 and section 416.969 of Regulations
     No. 16 and Rule 201.25 of Table No. 1, Appendix 2,
     Subpart P, Regulations No. 4 would direct a finding
     that she is not disabled.

11.  Although the claimant's limitations do not allow her to
     perform the full range of sedentary work, using the
     above-cited rule as a framework for decisionmaking,
     there are a significant number of jobs in existence in
     the national economy which she could perform.  Examples
     of such jobs are: information clerk, surveillance
     system monitor, and interviewer.  The vocational expert
     testified that there are over 200,000 of the named
     sample jobs in existence in the national economy; a
     significant number of jobs.

12.  The claimant was not under a "disability," as defined
     in the Social Security Act, at any time through the
     date of this decision.  20 CFR 404.1520(g) and
     416.920(g).

(Tr. 18-19).

3

On October 23, 2004, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 6-8), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

The following medical summary is taken in large measure from the ALJ's decision.

The claimant is a younger individual, currently 42 years old, with a history of treatment for musculoskeletal impairments. She underwent a cervical laminectomy and fusion at C5-6, in April 1994, following which it was recommended that she perform work with a 30-pound lifting limit. (Exhibit 5F [Tr. 184-194]). She had decompressive surgery on her right shoulder in May 1995, and was subsequently treated for tendonitis of the shoulder. It was recommended that she avoid overhead work or lifting more than 10 pounds with the right upper extremity. (Exhibit 27F [Tr. 389]). Nevertheless, the claimant continued to perform light-medium work. (Exhibits 7E and 9E [Tr. 101-08, 111-12]). Lumbar laminectomy was performed in March 1997 at levels

4

L3-S1 due to stenosis. She was released to return to work within a few months of the surgery, and she returned to work as a customer service clerk at K-Mart. (Exhibits 20F and 29F [Tr. 317-339, 395]).

However, when she moved from California to Alabama, she was performing a more demanding job for K-Mart, working in the restaurant, which she described as medium work with lifting of up to 50 pounds. (Exhibit 2E, pages 3 and 11 [Tr. 73-82]). She said she worked 8-9 hours a day, standing on a concrete floor. After working there for several months, the claimant quit work July 25, 2000, her alleged onset date of disability. From the evidence, she has not engaged in any substantial gainful activity since that date.

The evidence reveals that the claimant sought treatment in August 2000, complaining that her lower back hurt. She related that working, standing on hard surfaces had bothered her back. X-ray studies and a MRI of the back were normal. (Exhibits 18F and 20F [Tr. 295-308, 317-339]). She visited Dr. McCombs, who had performed her laminectomy in 1997. He prescribed use of medications such as Flexeril, Darvocet, and Naprosyn, and she did not voice any ongoing complaints until late 2000.

The claimant returned to see a local nurse practitioner in November 2000, complaining that her back, neck, and shoulder were bothering her. An MRI of the right shoulder showed some

5

impingement, but no tendonitis or rotator cuff tear. An MRI of the cervical spine showed some "mild" degenerative changes, but no stenosis or herniated disc. Use of Vioxx was prescribed (Exhibit 18F [Tr. 295-308]).

Ms. Barth sought evaluations of her shoulder and cervical spine by specialists, Drs. McCombs and Heffington. Dr. McCombs obtained MRI studies, which showed some degenerative changes of the shoulder joint and mild bulging of the discs in her lower back. She did not require any surgery. Dr. Heffington prescribed conservative treatment for her cervical and shoulder complaints, including trigger point injections and cervical traction. (Exhibits 14F, 20F, and 29F [Tr. 262-68, 317-339, 395]).

The evaluating specialists did not indicate that the claimant was disabled or unable to work. However, the claimant filed her applications seeking disability benefits in March 2001. She related that she was no longer able to engage in activities such as playing ball, going fishing, or camping. She indicated that she did not perform household activities such as sweeping and mopping or ironing. She related in 2001 that she did engage in activities such as getting her teenage boys up and off to school in the morning, cooking, going shopping, caring for a pet dog, doing dishes, performing household chores as she was able, doing laundry, driving, attending church, occasionally sewing and

6

quilting, having her young nieces over and keeping them overnight, and going to her boys' games. (Exhibit 5E [Tr. 90-96]).

The claimant was referred for consultative physical and mental evaluations when she filed her applications seeking disability benefits, with the evaluating sources reporting in June 2001 that she retained the capacity to engage in substantial gainful activity. (Exhibits 12F and 13F [Tr. 254-261]). At her physical examination, she had normal findings such as a full range of motion of the back and joints, a normal gait, and no difficulty moving about. The consultative examining physician opined that she was physically able to engage in substantial gainful activity. At her mental evaluation, Ms. Barth related that she was taking an antidepressant medication, Buspar, and had previously taken similar medications such as Zoloft and Prozac. Testing revealed that she has average intelligence and is literate. The psychological examiner reported that the claimant remained mentally able to work, with a mild decrease in her memory and a moderate limitation in her ability to maintain concentration and attention, with no limitation in her ability to interact and function socially. Reviewing State Agency medical consultants opined that she retained the capacity to perform medium work, with a moderate limitation in her ability to maintain concentration and attention. (Exhibits 15F-17F and 19F

7

[Tr. 269-294, 309-316]).

Thereafter, the claimant occasionally had appointments
with physicians with her usual complaints of neck, shoulder, and
back discomfort (i.e., Exhibits 20F, 21F, 29F, and 30F [Tr. 317-
350, 395-413]).  No acute abnormalities were diagnosed, and she
was treated conservatively with medication.  She was referred to
another specialist, Dr. Schoettle, in April 2002.  He examined
the claimant and reviewed her test results, indicating that she
did not need any surgery, though physical exam revealed muscle
spasm, weakness, and "much pain" in the neck due to cervical
stenosis. (Exhibit 35F [Tr. 426-28]).  Considering her multiple
musculoskeletal complaints, Dr. Schoettle has completed a medical
source statement indicating that the claimant can perform
sedentary-type activities, such as lifting 10-15 pounds, walking
standing 2-3 hours during a workday for less than an hour at a
time, and sitting 4-6 hours during a workday for an hour at a
time, with reduced reaching with her right shoulder. (Exhibit 36F
[Tr. 430-32]).

Eventually, in late 2002, the claimant was referred to
a pain clinic for routine, follow-up treatment with injections
and oral medications for her complaints of discomfort.  Repeat
MRI studies were obtained.  It was felt that she might have a
small tear of the right rotator cuff, with a tear being ruled out
by subsequent testing.  A repeat MRI obtained in December 2003

8

was interpreted as showing a small herniated disc at C4-5, but there was no evidence of nerve root impingement. No cervical surgery has been prescribed or performed. Instead, she was diagnosed with a right carpal tunnel syndrome, which was surgically released. She had surgery in January 2004, also, for deQuervain's tendonitis. She has not visited physicians complaining of significant residuals of the procedures in follow-up (i.e., Exhibits 21F-23F and 30F-32F [Tr. 340-376, 396-421]).

At her hearing, plaintiff confirmed that she had had surgeries on her neck, shoulder and lower back in the 1990s, and that she had recently had several procedures on her wrists/arms for carpal tunnel syndrome and tendonitis (Tr. 457). She was scheduled to have further wrist surgery the day after the hearing, and had been wearing braces on both wrists for the two months preceding the hearing (Tr. 457). Her wrist problems and surgeries left her unable to hold things like a coffee cup, grocery items, etc. (Tr. 457-58). She further testified about the pain in her right shoulder, neck, and low back (Tr. 458-461). She testified that she could not alternate between sitting and standing all day, but had to lay down twice a day for between half an hour and an hour and a half at a time (Tr. 462). She testified she could still drive, but did not drive long distances (Tr. 462-63). She did not do her own grocery shopping (Tr. 463). She testified that her worst problem that would keep her from

9

working is her spinal impairments (Tr. 468).

### III.   CONCLUSIONS OF LAW

#### A.   Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. <u>Jones v. Secretary</u>, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  <u>Landsaw v. Secretary</u>, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." <u>Her v. Commissioner</u>, 203 F.3d 388, 389 (6th Cir. 1999)(<u>citing</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." <u>Bell v. Commissioner</u>, 105 F.3d 244, 245 (6th Cir. 1996).  Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. <u>Her</u>, 203 F.3d at 389 (<u>citing</u> <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997)).  However, if the record was not considered as a whole, the Commissioner's conclusion is undermined.  <u>Hurst v.</u>

<u>Secretary</u>, 753 F.2d 517, 519 (6th Cir. 1985).

        B.  <u>Proceedings at the Administrative Level</u>

        The claimant has the ultimate burden to establish an
entitlement to benefits by proving his or her "inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 423(d)(1)(A).  At the administrative level
of review, the claimant's case is considered under a five-step
sequential evaluation process, as follows:

(1)  If the claimant is working and the work constitutes
     substantial gainful activity, benefits are automatically
     denied.
(2)  If the claimant is not found to have an impairment which
     significantly limits his or her ability to work (a "severe"
     impairment), then he or she is not disabled.
(3)  If the claimant is not working and has a severe impairment,
     it must be determined whether he or she suffers from one of
     the "listed" impairments[2] or its equivalent; if a listing is
     met or equaled, benefits are owing without further inquiry.
(4)  If the claimant does not suffer from any listing-level
     impairments, it must be determined whether the claimant can
     return to the job he or she previously held in light of his
     or her residual functional capacity (e.g., what the claimant
     can still do despite his or her limitations); by showing a
     medical condition that prevents him or her from returning to
     such past relevant work, the claimant establishes a <u>prima
     facie</u> case of disability.
(5)  Once the claimant establishes a <u>prima facie</u> case of
     disability, it becomes the Commissioner's burden to
     establish the claimant's ability to work by proving the
     existence of a significant number of jobs in the national

_____

        [2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P,
Appendix 1.

                                11

economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination. Id. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

12

C.  <u>Plaintiff's Statement of Errors</u>

Plaintiff alleges various errors by the ALJ which, while well argued, do not persuade the undersigned of the need for reversal and remand.  However, upon reviewing the ALJ's decision, it appears that the step five finding of a significant number of jobs which plaintiff could perform is deficient in light of the ALJ's prior finding of plaintiff's residual functional capacity.  Accordingly, the undersigned must conclude that reversal and remand for further proceedings is warranted on that basis.

As a threshold matter, plaintiff's allegations of error include an argument that plaintiff's spinal condition meets or equals the criteria of § 1.05(C) of the Listing of Impairments, rendering her presumptively disabled and entitled to benefits. The ALJ found that plaintiff "does not have the type of acute back impairment or the wide range of persistent symptomatology outlined in Appendix 1 with regard to back conditions."  (Tr. 18).  In support of her argument, plaintiff cites the ample objective indicia of severe impairments to her cervical and lumbar spine, contending that this evidence establishes the required "pain, muscle spasm, significant limitation of motion, and appropriate radicular distribution of significant motor loss with motor weakness and sensory reflex loss."  (Docket Entry No. 15, p. 3).  The government in its brief sets out the full text of

13

the listing (Docket Entry No. 16, pp. 4-5), and disputes
plaintiff's contention that she meets or equals all listed
criteria.

However, the listed impairment which both parties refer
to in their analyses was rescinded effective February 19, 2002,
some two and one-half years prior to the ALJ's decision in this
case.  Rice v. Barnhart, 384 F.3d 363, 369 n.4 (7th Cir.
2004)(*citing* 66 Fed. Reg. 58, 010 (Nov. 19, 2001)).  Section 1.05
now refers to impairments resulting from amputation, while the
elements of former § 1.05(C) have been incorporated in some
respects in revised § 1.04, and deleted entirely in other
respects.  This revision of course begs the question of which
version of the listings applies: the version in effect at the
time the ALJ rendered his decision, or the version in effect at
the time plaintiff's application was initially filed?  The ALJ
did not specify the particular section of the listings he
considered in finding that plaintiff failed to meet the listed
criteria "with regard to back conditions."  The Rice court
indicated that the listing in effect at the time of the ALJ's
decision should apply.  This position appears to be well
supported by courts and the Commissioner alike.  E.g., Brown v.
Barnhart, 370 F.Supp.2d 286, 290-92 (D.D.C. 2005)(finding
reversible error in the ALJ's failure to apply the criteria of
new § 1.04, where revised criteria became effective three days

14

prior to the ALJ's ruling, because claimant's application was still pending in the administrative review process when revisions became effective).[3]

However, courts including our own Sixth Circuit have taken a contrary view when the revised listing would work a detriment to plaintiff's claim to benefits, specifically with respect to the instance where an impairment that the claimant suffers from is removed entirely from the Listings during the pendency of the benefits application.  In <u>Combs v. Comm'r of Soc. Sec.</u>, 400 F.3d 353 (6th Cir. 2005), <u>reh'g en banc granted</u> (July 15, 2005), the court held that the Commissioner is not empowered by Congress to engage in retroactive rulemaking, and therefore that the deletion of the obesity listing (former § 9.09) could not be considered against claimants who filed their applications for benefits prior to the effective date of that deletion, as doing so would substantively alter the rights of the claimant. <u>Id.</u> at 356-360.  The <u>Combs</u> court cited numerous district court opinions which had analyzed the new obesity regulations in the

_____

[3]The <u>Brown</u> court relied in part upon the Commissioner's clarifying language contained in the Federal Register, as follows:

> As is our usual practice when we make changes to our regulations, we will apply these final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process ... With respect to claims in which we have made a final decision, and that are pending judicial review in federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.

66 Fed. Reg. at 58011.

15

context of retroactivity law, noting that the only circuit court to consider the issue had presumed that the new regulations could be applied retroactively without analysis.  <u>Id.</u> at 359.

However, the <u>Combs</u> panel, though unanimous, had its decision vacated when the Commissioner's petition for rehearing *en banc* was granted.  Moreover, this case is distinguishable from <u>Combs</u> on a number of fronts, not the least of which is the fact that plaintiff cannot satisfy the criteria of either former § 1.05(C) or current § 1.04.[4]  Finally, for the reasons that follow, the undersigned finds other reversible error in the decision of the ALJ, rendering further discussion of possible legal error with respect to the listings issue unnecessary.  However, to say the least, it would have been helpful if the government (being the only party represented by counsel) had developed this issue initially.

While the undersigned finds no error at step three of the sequential evaluation process, the ALJ's step four finding of plaintiff's RFC is deficient, resulting in a failure to carry the Commissioner's step five burden.  The ALJ found that plaintiff "retains the capacity to perform sedentary work, with lifting of 10-15 pounds, 2-3 hours of walking/standing during an 8-hour workday for less than an hour at a time, 4-6 hours of sitting

---

[4]Specifically, there is no evidence of significant limitation on spinal range of motion, radicular distribution of significant motor loss, muscle weakness, sensory and reflex loss, spinal arachnoiditis, or pseudoclaudication.  The evidence of nerve root involvement is also minimal.

16

during an 8-hour workday for 1 hour at a time, decreased reaching
using her right shoulder, and a moderate limitation in her
ability to maintain concentration and attention." (Tr. 18).[5]
The problem with this RFC finding is that the capacities for
standing/walking and sitting are established in ranges which at
the lower or even median points do not add up to eight hours.

In Bladow v. Apfel, 205 F.3d 356 (8th Cir. 2000), the
Commissioner conceded that the agency's official policy with
respect to step five determinations is that "'only an ability [on
the part of the claimant] to do full-time work will permit the
ALJ to render a decision of not disabled.'" Id. at 359 (quoting
Kelley v. Apfel, 185 F.3d 1211, 1214 (11th Cir. 1999)). The
court noted that this policy was based on the interpretation
offered in Social Security Ruling 96-8p, which provides as
follows:

> RFC is an assessment of an individual's ability to do
> sustained work-related physical and mental activities
> in a work setting on a regular and continuing basis. A
> "regular and continuing basis" means 8 hours a day, for
> 5 days a week, or an equivalent work schedule.

Id. (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2,
1996)); see also Carr v. Apfel, 66 Soc. Sec. Rep. Serv. 655, 1999
WL 1489892, *5 (N.D. Ohio Sept. 29, 1999)(same; further finding
that "[t]he ability to work on a part-time basis is relevant only

---

[5]All of the exertional limitations contained in this RFC finding are
taken from the medical assessment of neurosurgeon Dr. Timothy Schoettle (Tr.
430-32), who last treated plaintiff in April 2002.

at *step four*--and not *step five*--of the sequential evaluation
process.").

        At the administrative hearing in this case, the ALJ,
referring to Dr. Schoettle's RFC assessment, asked the VE if he
could "identify work that accommodates all the restrictions
[identified therein] **if you assume the document would permit
full-time work**" (Tr. 473-74).  The ALJ himself makes this
assumption in his followup hypothetical to the VE, again
referencing Dr. Schoettle's assessment: "If an individual can
lift as much as ten pounds and stand and walk at least two hours
a day and sit **at least** six hours a day with that sit/stand option
... [w]ould that permit those jobs [previously identified by the
VE]?"  (Tr. 474-75).  However, this hypothetical does not
accurately reflect the RFC assessed by Dr. Schoettle and
determined by the ALJ.  In short, Dr. Schoettle's assessment
clearly contemplates that there will be days, perhaps as often as
not, when plaintiff will not be able to make it through a full 8-
hour work shift without needing to lie down for some period of
time.[6]  In adopting this assessment as the exertional component
of his RFC finding, the ALJ was not entitled to assume that it
would allow for full-time work, nor was he entitled to rely on VE
testimony in response to a hypothetical which changed the sitting

_____

        [6]This is consistent with plaintiff's hearing testimony that she has to
lie down twice a day, anywhere from thirty minutes to an hour and a half at a
time (Tr. 462).

18

capacity from "4-6 hours" to "at least six hours."  Accordingly,
the Commissioner's decision should be reversed and the cause
remanded.  Cf. Bladow, 205 F.3d at 359-360 (remanding for
clarification of claimant's RFC where ALJ's finding could be
construed as permitting full-time work, but also suggested that
claimant might be limited to working six hours a day).

        Finally, the undersigned would note that bilateral
manual dexterity tends to be a significant component of
functioning in sedentary jobs, as recognized by the Commissioner.
Soc. Sec. Rul. 83-12, 1983 WL 31253, at *4 ("[M]ost unskilled
sedentary jobs require good use of both hands."); Soc. Sec. Rul.
83-14, 1983 WL 31254, at *2 ("[B]ilateral manual dexterity is
necessary for the performance of substantially all unskilled
sedentary occupations.").  Here, in addition to having problems
with her right shoulder requiring decompressive surgery in 1995
and continuing treatment of cervical stenosis/disc herniation and
shoulder pain complaints with trigger point injections, cervical
traction, and oral medications, plaintiff has suffered from
carpal tunnel syndrome in her right upper extremity which was
surgically released, and showed symptoms and signs of carpal
tunnel in her left (dominant) upper extremity which she testified
required surgery in 2004, as well as de Quervain's tendonitis in
both wrists requiring surgery (on the left, in January 2004; on
the right, evidently, the day after the hearing) and the use of

19

wrist braces (Tr. 351-53, 414, 457). It does not appear that her orthopedic surgeon was asked to complete a functional capacity evaluation, nor has any physician completed such an evaluation in light of her upper extremity impairments. While the ALJ found that plaintiff's severe impairments included "wrist surgery" (Tr. 19), he discounted these surgeries as "more minor procedures" (Tr. 17) and did not include any manipulative restrictions in his RFC finding despite plaintiff's testimony as to her problems with numbness and dropping things since her surgeries in 2004 (Tr. 458). Though the ALJ's hypothetical to the VE did incorporate some manipulative restrictions which the VE "believe[d]" would be compatible with the sedentary jobs he had identified (Tr. 474-75), this issue was given relatively short shrift in the ALJ's decision (though, to be fair to the ALJ, there was scant medical evidence on the issue), and will need to be revisited in light of whatever further evidence is received relating to these surgeries and post-surgical limitations.

In sum, the undersigned concludes that the legal error identified above requires reversal of the Commissioner's decision, with remand to the agency for supplementation of the medical record, rehearing, and the issuance of a new decision.

## IV.   RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **GRANTED**, and that the decision of the Commissioner be **REVERSED** and the cause **REMANDED** for further proceedings consistent with this report, to include supplementation of the medical record, rehearing, and the issuance of a new decision.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 19th day of September, 2005.


     /s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

Case 1:05-cv-00006   Document 17   Filed 09/19/05   Page 21 of 21 PageID #: 33